Thank you. Victor Chavez on behalf of Appellant Joseph Venutra. Mr. Venutra's disposable income was determined to be $26 a month. His own monthly income is $209 a month in disability benefits. Nonetheless, the court imposed the full loss as restitution, $78,000. In doing so, we don't contend that the court did not have financial information before it and did not consider it. In fact, the court had ample financial information, I think. And the problem is that the court imposed the full amount of restitution even though it concluded, A, that Mr. Venutra could not at the present time pay it. And, in fact, there was no dispute that he was doing all he could by paying $25 per month. And, secondly, the court made no determination that he might be able to pay it in the future based on some potential for future employment, future income. And, in fact, as reflected in the probation officer's memorandum, Mr. Venutra is disabled and his prospects for paying a sum of $78,000 within a approximately two-year period I think virtually were nil. And I don't think anybody saw it differently. What I think the court did, which I think and what I believe was improper, is that the court was saying, I will order the full amount of restitution so that in case he should become able to pay it. And the court even used the example of an inheritance. And I think that that's precisely what the court should not have done under the cases of the Ninth Circuit. Roberts. What provision is there for a windfall? Let's suppose that the district court had followed your suggestion and ordered $25, $26 a month for the term of the supervised release and ended it at that. And during that period, Mr. Venutra wins the California lottery. Can the government come back and ask the district court to increase the restitution award? I would answer no. What about the flip side? Let's say the district court enters an order like this, I believe you could, Your Honor. So we can reduce it but not increase it. Well, Your Honor, if you still had a supervised release, then without being, I'm not certain of this, but I believe an argument could be made that within the term of supervised release that, well, I'm sorry. I don't believe you could increase it because I believe once he found what the loss was and made a restitution order, it would be my position that he could not then increase it. But I have to admit that I'm not. We're dealing with the old act, aren't we? Yes, we are, Your Honor. The new act specifically removes the ability to pay as a consideration, doesn't it? Yes. But this is the old Victim Witness Protection Act. Correct. And the court had discretion not to impose any restitution at all. And obviously the court didn't have to take that course, and I well understand why it would not. But what the courts have done in other similar cases where there have been large loss amounts and defendants who have been indigent at the time of sentencing, the courts frequently have ordered a fraction of the total amount. One case comes to mind where the loss was $1.2 million. An order of $50,000 restitution was made as to an indigent defendant and was upheld. Now, in this case, if the court operated on the premise that Mr. Ventura could pay $25 a month and there were about two years remaining on supervised release, that's about $600. If the court had ordered restitution of, you know, $10,000 or something, I think that that would be consistent with the cases, particularly the Ruffin case and the Romillo case, which to my reading talk about the court making an order that is based on some evidence that the defendant can pay the total amount within the total period of supervised release. And in essence, that's our beef with this restitution order. It's a very nominal, the judge said, $25 a month. Probation will update his financial circumstances. But I simply think that it was an abuse of discretion to impose the full quantity of restitution, because as I said, the court found that he could not pay at the time of sentencing and accept about $25 a month. And if the court didn't say this, but if the court was thinking that he could pay $78,000 in two years, I would say that that's an abuse of discretion. And if the court ordered the full $78,000 of restitution, just in case there would be some unforeseen windfall, which I think the record does support that appraisal of the situation, then I think that that's an abuse of discretion. And I would add that there were two sentencing hearings in this matter. At the first one, the court was dissatisfied with the financial information made available to it. And it put them... Counsel, in your view, would it be appropriate for us to remand this case for the court to make those explicit findings that you imply were not included? Your Honor, I think remand would be appropriate, but not specifically to make specific findings, because it's my position that specific findings aren't even required under the Ninth Circuit's case law. However... So no finding is required regarding the future ability to pay? Well, I think implicit in the court's decision that the court made is a finding that he can pay this within two years. The court did not make, and I believe could not make, an explicit finding to that effect. If I read the case law, the court is supposed to impose restitution... What would you say we should remand for? For what purpose? He said we should remand. Well, for the purpose of imposing a restitution order that the court feels the defendant is able to pay within a two-year period. I think that's the standard, as I understand it. So you want to give him one more chance to get it right? Yes. Okay. Thank you. I'll reserve my remaining time. Good morning. May it please the Court. I'm Carl Fowler, representing the United States in this matter. Do you agree with the response to the question I asked earlier that this is under the old Act? Absolutely, Your Honor. Yes, it is. It's not under the new Act. No. No. If it were under the new Act, we wouldn't be here. We probably wouldn't be here. That's correct, sir. And I read the sentencing hearing that took place in July 2902. I think it's excerpt of Record 22. Yes. And you agree that Judge Cole said that he didn't have, didn't see anything in the record before him that the defendant could pay the amount? This is at page 34. The Court doesn't. I do. I do agree that the Court did indeed. And it was fairly obvious at both, at all the sentencing hearings that the defendant was not in a position at that moment. Nor is he in a position today, I would concede, to pay the entire restitution amount of $78,000. When did it have to be paid by? What was the term within which it had to be paid under the statute? Under the statute, it would appear to have to be paid within the term of supervised release, which is approximately two years. However, my recollection of reading the statute, that there are provisions in the statute for the Court to either extend or shorten the time, depending on changes of circumstances. To what maximum? I believe it's a five-year maximum. So it's either two years that he has to pay the $78,000 or five years. That's correct. If we don't know that there's a provision for five years, but we don't know there isn't at this point. But normally it would be two years. Now, you concede that there was no way he could have paid that in that time? I concede that as of the date of the sentencing hearing, he did not have the present ability to pay that entire amount. No, not just that. Is there anything in the record that shows that within two years is a reasonable chance he could pay that? I would have to say that as of today. Well, yes, there are some things that indicate a potential ability to pay more than the $25 a month. No, no. I said $78,000. Is there anything in the record that shows a potential ability within two years or even five to pay $78,000? There's nothing in the record that shows a present ability to pay that amount. I didn't say present. I said potential ability to pay within that period. I think there are some potential abilities, yes. What are those facts in the record? Well, number one, in the probation report they talk about the fact that although Mr. Venturi is currently on disability, he's not without skills. He ran a business. He was a businessman. He has some education. There are potentials that he could be retrained to engage in some kind of meaningful and lawful occupation. He is a ‑‑ I note that in many of the cases that were discussed, they have talked about that a defendant may be not without skills and the ability to succeed to a higher level of productivity than they can demonstrate at the actual sentencing hearing. I think there are ‑‑ I think there are potentials for him to improve himself and to be in a position to ‑‑ Is there anybody who wouldn't fall in that category, that he wouldn't have the potential to improve himself? Nobody that wouldn't have the potential to improve themselves, but I think there are folks ‑‑ They're probably under that standard. Well, I think ‑‑ Nobody who could qualify. Well, I don't necessarily agree, Your Honor. There are folks that find themselves in front of the court that I'm afraid have very little potential to improve themselves to the level that they can engage in a meaningful, lawful occupation. Can you point us to the probation report where it talks about potential future ability? It does not discuss that in those terms, Your Honor. I'm looking at page 3 of the report. It says, It appears the offender's current financial condition indicates little or no ability to pay restitution. That's correct. Skipping a couple of lines down. If the court considers the offender and his spouse's tax debt, it is doubtful Mr. Ventura will ever be able to pay more than just a minimal amount towards any restitution order. I think that's absolutely accurate. It is doubtful. There is no doubt about that. And I think that what Judge Coyle was doing was trying to give him the benefit of the doubt in that regard. While he imposed the entire amount, he tried to structure something over, for his policy, behind having criminal defendants pay restitution, yet did not impose a total burden on the defendant. He tried to fashion a system where he kept the issue open over the next two years. If something happens where the defendant, either on his own or for some other reason, has a change in circumstance, that the entire amount can be paid. However, he also imposed a current regular obligation that is within the defendant's ability to meet. I think he worked very hard to try and to try and address all of the interests of both the need for restitution and the defendant's present circumstances. Is there some reason you did not discuss in your brief the case of United States v. Romillo? Not specifically, Your Honor. I have read it. Is there generally a reason, not a specific reason? No, Your Honor. I have neither a general nor specific reason. I know it was cited by the defendant. It would seem to be the most relevant case we have. Well, it is indeed a relevant case, and certainly it's a 1992 case that does discuss these issues. However, there are later cases that I did indeed discuss. Yes. There are later cases that go your way because there was something in the record. But it is Romillo that says that at the time restitution is ordered, the record must reflect some evidence the defendant may be able to pay restitution in the amount ordered in the future. And that seems to be the basic rule we have to deal with here. And I wondered why you thought that was irrelevant to our discussion. I certainly don't think it's irrelevant, Your Honor. And it was discussed in the later cases that I specifically cited in my brief. I do note that in those later cases, while that is the general rule, there were situations where defendants had negative net worth, had negative cash flow, and the court of appeals did say that in that particular situation because of ---- Yes. For instance, where someone had a computer science degree. That's correct. Or strong computer skills. That's demonstrated ability to earn using those skills. There was the instance of the failed basketball player. Okay. Counsel, let me ask you this. If 5 years was the outside limit for restitution, what would happen after the 5-year period in your view? In my view, after the expiration of the 5-year period, I think that the defendant, if he has made a good faith try at paying restitution, I think that that is all that the government and the justice system can ask for. And then it becomes a question of being a civil debt, and it's frankly up to the victims to pursue it at that point if that's what they should so choose to do. Okay. What was the date on which this was imposed? Was this after the service of the sentence had been completed? Yes. And there was a term of supervised release? Yes. And that was a 3-year term or a 2-year term? There's 2 years remaining. I believe it was a 3-year term. There's 2 years remaining on the term of supervised release. That's correct. Okay. And do you treat that supervised release? Because when the statute was written, there was probation. Oh, no. It does, if it's term of supervised release, there's probation. All right. So you don't take a position on whether it's 2 years at the end of the term of supervised release that this has to be paid, or whether it's for some reason 5 years? I have to. I have to confess that I have a recollection of a 5-year limit under the old statute, but I cannot specifically indicate to the Court where that comes from. Thank you. And it's our hope, Your Honor, that the Court will uphold Judge Coyle's order that it One other question. How long ago was this order issued? I'm sorry? How long ago was the order issued? The original order? The one that we're here on now. It was in July. Okay. July of 2002. All right. Thank you. Thank you, Your Honor. Thank you, counsel. In rebuttal, I would just, I guess, update the Court and let the Court know that Mr. Ventura has been paying $25 a month. He's still disabled. In terms of his educational level, he has some junior college.  business, which really is where the underlying bankruptcy fraud stems from. Prior to that, he and his wife did have a travel agency. That has not existed for many years. And the last employment that he had was helping a daughter with a paper route for the Modesto Bee. He's disabled. He basically spends his time taking care of his grandchildren. And it's our position that once supervised release is completed, and at this time he's got about a year to go, it's my position, and I believe I set this forth in my brief, that civilly there will be a five-year window during which action can be taken to recover this debt. I'll submit it. Do you have a position on whether the restitution may, under the statute, be ordered to be paid for up to two years or up to five years? My position is that under this, the old statute that we're dealing with, after the termination of supervised release, it can be collected for up to five years. After termination of supervised release? That's correct. I believe I cite a case to that effect. Five years after? So that means seven years? Well, it means six years from today, basically. Seven years from the date of the order? Seven years from sentencing. That's correct. Okay. Well, if you want him to be obligated longer than your opponent does, so that's my view. Well, I don't want him to be, but I – I mean, your view of the law is – That's my view of the law, yes. Okay. Okay. Thank you. The case just argued will be submitted. The Court will stand in recess for the day.
judges: Reinhardt, Hawkins, Rawlinson